UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Brenda Cragin,

      Plaintiff,

     v.                                        Civil Action No. 2:12-CV-259

Commissioner of Social Security,

      Defendant.

## OPINION AND ORDER
(Docs. 5, 6)

Plaintiff Brenda Cragin brings this action under 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Cragin's motion to reverse the Commissioner's decision (Doc. 5), and the Commissioner's motion to affirm the same (Doc. 6). For the reasons stated below, the Court DENIES Cragin's motion and GRANTS the Commissioner's motion.

## Background

Cragin was thirty-six years old on her alleged disability onset date of June 17, 2005. She has a high school education, and has worked as a cashier, a receptionist, an administrative assistant, and an insurance broker. She has also engaged in collections and customer service work at Fletcher Allen Health Care. She is married,

and has three children who are approximately sixteen, eighteen, and twenty-one years old.

In 2005, Cragin was a passenger in a vehicle that was rear-ended while stopped at a stop sign.  She subsequently developed neck, shoulder, spine, and hip pain.  She underwent multiple surgeries to address these and other medical problems, including carpal tunnel syndrome in both wrists.  Cragin claims these surgeries provided only temporary relief, due in part to a fall in 2007, which set back her recovery.  Also around that time, she began experiencing severe pain and burning in her joints, muscles, and nerves.  In September 2009, she was diagnosed with lupus, a disease that causes joint pain or swelling and muscle pain.  In November of that year, she was diagnosed with diabetes mellitus.  Eventually, Cragin's condition progressed to include shaking, dizziness, difficulty swallowing, and dehydration.  Medical records from 2009 and later reflect that Cragin suffered from uncontrolled joint pain and stiffness, spinal degeneration including lumbar degenerative disc disease and disc herniation, rashes, headaches, and depression.  Narcotic pain medication, which had previously reduced the severity of her pain, was no longer effective and resulted in sedation.  In updated social security disability forms, Cragin advised that, in October 2009, January 2010, and April 2010, respectively, her pain, fatigue, and other symptoms increased in severity, resulting in a substantial decrease in her ability to function.  (AR 193, 219.)

In September 2009, Cragin protectively filed applications for Supplemental Security Income ("SSI") and social security disability insurance benefits ("DIB") for the period beginning on June 17, 2005 (the "alleged onset date") and ending on

December 31, 2008 (the "date last insured").  In her DIB application, Cragin alleged that, starting on June 17, 2005, she has been unable to work due to lupus, degenerative disc and back problems, arthritis, fibromyalgia, headaches, depression, and other conditions. (AR 171.)  She explained that she suffers from extreme fatigue, constant pain and inflammation, swollen hands and knees, nausea, dizziness, and headaches. (*Id.*)  She stated that she "just tr[ies] to get through a day," and can no longer do many activities including watching her son's football games, cooking, or cleaning. (*Id.*)

Cragin's SSI and DIB applications were denied initially and upon reconsideration, and she timely requested an administrative hearing.  The hearing was conducted on July 5, 2011 by Administrative Law Judge ("ALJ") Paul Martin. (AR 41-63.)  Cragin appeared and testified, and was represented by an attorney.  A vocational expert also testified at the hearing.  On August 23, 2011, the ALJ issued a decision finding that Cragin had not been disabled under the Social Security Act during the period between June 17, 2005, her alleged onset date, and December 31, 2008, her date last insured; but has been disabled under that Act beginning on September 14, 2009. (AR 21-34.) Thereafter, the Appeals Council denied Cragin's request for review, rendering the ALJ's decision final. (AR 1-3.)  Having exhausted her administrative remedies, Cragin filed the Complaint in this action on November 20, 2012. (Doc. 1.)

### ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial

3

gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

4

Employing this sequential analysis, ALJ Martin first determined that Cragin had not engaged in substantial gainful activity since her alleged onset date of June 17, 2005. (AR 24.)  At step two, the ALJ found that Cragin had the following severe impairments since June 17, 2005: degenerative disc disease, bilateral carpal tunnel syndrome, right ulnar subluxation, left shoulder impingement and arthrosis, fibromyalgia, and obesity. (*Id.*)  The ALJ further found that, beginning on September 14, 2009, Cragin had the additional severe impairments of lupus with Sjögren's syndrome and diabetes mellitus. (*Id.*)  Conversely, the ALJ found that Cragin's depression and anxiety were non-severe. (AR 24-26.)  At step three, the ALJ found that none of Cragin's impairments, alone or in combination, met or medically equaled a listed impairment.  (AR 27.)

Next, the ALJ determined that, prior to September 14, 2009, Cragin had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), "except that she could only occasionally climb, balance, stoop, kneel, crouch, or crawl."  (AR 28.)  Given this RFC, the ALJ found that Cragin was unable to perform any of her past relevant work. (AR 32.)  Finally, using Rule 202.21 of the Medical-Vocational Guidelines ("the Grids") as a framework, the ALJ determined that, considering Cragin's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Cragin could have performed prior to September 14, 2009.  (AR 32-33.) The ALJ concluded that Cragin had not been under a disability from the alleged onset date through the date last insured.  (AR 33-34.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Poupore*, 566 F.3d at 305.  In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

I.     **Cragin's Non-Exertional Impairments**

Cragin argues that the ALJ failed to properly consider the extent of Cragin's non-exertional impairments, including her reaching limitations, chronic pain, and required absences from work due to multiple surgeries.  Cragin further suggests that the ALJ erred in finding that Cragin was not fully credible.  The Commissioner disagrees, asserting that the ALJ's decision should be affirmed because it is supported by substantial evidence.

   A.     **Reaching Limitations**

In finding that Cragin was not limited in her ability to reach during the insured period, the ALJ relied on the opinions of non-examining agency consultants Dr. Pisanelli and Dr. Abramson, who each found no reaching limitations.  Specifically, in December 2009, Dr. Pisanelli found that Cragin suffered no limitation in her ability to reach in any direction, including overhead.  (AR 748.)  And in April 2010, Dr. Abramson made the same finding.  (AR 795.)  Although generally the opinions of non-examining consultants are less valuable than those of treating physicians, the opinions of non-examining agency consultants may override those of treating physicians when the former are supported by the record and the latter are not.  *See* SSR 96-6p, 1996 WL 374180, at *3 (1996) ("In appropriate circumstances, opinions from State agency . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."); 20 C.F.R.

7

§ 404.1527(e)(2)(i) (state agency medical consultants are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"). Here, the record supports the opinions of Drs. Pisanelli and Abramson, as discussed below.

Moreover, despite her claims to the contrary, even the treating physician opinions do not support Cragin's argument. Dr. Lawlis, who treated Cragin's shoulders and wrists during the relevant period, acknowledged that Cragin had reaching limitations but stated that he did not believe Cragin was unable to work. (AR 280.) Rather, Dr. Lawlis opined that Cragin "*does* have a capacity to work." (*Id.* (emphasis added).) In October 2008, Dr. Lawlis reported that Cragin's surgeries appeared to have been mostly successful, and opined that she would "be able to regain some more motion as time goes by." (AR 251.) Cragin herself told treating providers that her surgeries were successful. (*See, e.g.*, AR 249 ("doing very well until she fell"), 275 ("felt [left carpal tunnel release] was quite successful"), 292 ("no complaints about her carpal tunnel release and she finds that to have essentially cured her problem"), 304 ("very happy with [carpal tunnel release] surgery"), 570 (reporting that "right ulnar transposition surgery . . . was successful").)

Cragin points out that her treating primary care physician, Dr. Amy Savoy, opined that she could reach only occasionally. (Doc. 5 at 5.) But that opinion was made in July 2011, over two years after Cragin's date last insured, and after Cragin's condition had deteriorated. (AR 1204, 1207.) The ALJ thus correctly stated that Dr. Savoy's opinion regarding Cragin's physical functioning was "inapplicable to th[e relevant] period" and "inconsistent with [the] treatment record prior to September 2009." (AR 31.) The ALJ further explained that Dr. Savoy's opinion regarding Cragin's reaching limitations was

related to Cragin's lupus, which was not a medically determinable impairment prior to September 14, 2009.  (*Id.* (citing AR 1202).)  The medical record supports this explanation, and reflects that it was not until September 2009 that Cragin was diagnosed with lupus.  (AR 711-12.)  In August 2009, less than a month earlier and nearly eight months after the date last insured, Dr. Chi Chi Lau, Cragin's treating rheumatologist, stated in a treatment note that Cragin had "no clinical signs or symptoms on exam or by history to support a diagnosis of systemic lupus or any other autoimmune condition." (AR 426.)

      **B.**     **Chronic Pain**

Cragin also claims that the ALJ erred in failing to consider her chronic pain.  But the ALJ explicitly discussed this issue, finding that Cragin's chronic pain was effectively treated with medication during the insured period.  (AR 29; *see* AR 414 ("patient has been well controlled on MS-Contin"), 424 ("[c]hronic pain issues have improved since . . . switched . . . to MS-Contin"), 547 ("taking Percocet . . . with reasonably good pain control"), 1183 (pain control improving, "able to wean [Percocet] down nicely").)  Cragin herself reported to a medical provider in August 2009 that she had "overall improvement" in her chronic pain symptoms, and that MS-Contin was "very successful" at controlling those symptoms.  (AR 414.)  More than a year earlier, in February 2008, Dr. Lawlis reported that, according to Cragin, the "main pain" that she experienced prior to shoulder surgery was "essentially gone."  (AR 280.)  Approximately two years before that, in January 2006, Cragin reported to another medical provider that her pain was "mostly gone," and that she took tramadol only "when her shoulder flare[d] up," which

9

occurred "with activity," such as bowling. (AR 356.) A day earlier, she told a different medical provider that she had "90% sustained relief" of her left-sided shoulder pain, with "only occasional flare-ups." (AR 358.) The provider stated:

> [Cragin] is doing quite well following two cervical epidural steroid injections. She has been doing well with a series of trigger point injections and is showing continued improvement after each procedure. . . . I do not feel that cervical medial branch blocks are indicated at this point since she is showing such significant improvement.

*Id.*

### C. Work Attendance Problems Arising from Multiple Surgeries

Cragin next claims that the ALJ erred in failing to consider her work attendance problems which arose from her multiple surgeries in one year. The record indicates, however, that Cragin's relevant surgeries occurred on only three dates in the years 2007 and 2008. (*See* AR 249, 267, 306.) Her first surgery appears to have been on her left shoulder and left wrist in October 2007 (AR 306), her second was on her right wrist in July 2008 (AR 267), and her third was on her right elbow in October 2008 (AR 249). Cragin has not presented evidence or persuasive argument demonstrating that these surgeries would have caused work attendance issues to the extent that she would have been unable "to engage in any substantial gainful activity . . . for a continuous period of not less than 12 months," which is required to meet the statutory requirement of being "disabled" under the Social Security Act. 42 U.S.C. § 423(d)(1)(A). In fact, Cragin herself characterized her shoulder and wrist surgeries as "day surgeries" in a social security disability form. (AR 176.)

10

### D. Credibility

Cragin makes a fleeting assertion that the ALJ erred in his assessment of Cragin's credibility. But the ALJ properly considered the entire case record and gave specific reasons in support of his determination that Cragin's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not credible prior to September 14, 2009." (AR 28.) *See* SSR 96-7p, 1996 WL 374186, at *4 (1996) ("When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."). After discussing the relevant medical evidence, particularly the records documenting the success of Cragin's 2007 and 2008 surgeries, the ALJ accurately stated that "the treatment record simply does not support [Cragin's] allegations of fully disabling pain during this period." (AR 30.)

The ALJ also noted "isolated references of work activity" during the insured period. (*Id.*) Specifically, in March 2007, nearly two years after the alleged disability onset date, Cragin reported to a medical provider that she was still working. (AR 333.) The report states: "[Cragin] is self-employed in the property . . . and building management business where she does . . . clerical work and works on a laptop." (*Id.*) Moreover, in October 2007, shortly after her first surgery, Cragin stated that she had stopped working but was planning to return to work in approximately three months. (AR 299.) Approximately four months later, in February 2008, Cragin told a medical provider that she had continued to work as a homemaker and for the family business at home. (AR 280.) Almost a year later, in January 2009, Cragin reported to a medical provider

11

that, despite being under "multiple stressors" including "chronic pain," she still had been "able to continue with her work." (AR 568.) Considering these references to work activity in conjunction with the medical record, the ALJ reasonably concluded as follows:

> [T]hese reports are consistent with the objective medical evidence establishing sufficient physical functioning for work during th[e insured] period. Moreover, even if [Cragin] did not actually work for the family business at the time, her work "as a homemaker" suggests that she retained significant physical functioning.

(AR 30 (citing AR 568).) It was proper for the ALJ to consider this evidence in determining whether Cragin was able to work during the relevant period.[1] *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996) ("Evidence of employment during a period of alleged disability is highly probative of a claimant's ability to work."). The ALJ's findings regarding Cragin's credibility are supported by substantial evidence, and thus are entitled to great deference. *See Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable") (quotation omitted); *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005) (ALJ's "evaluation of a claimant's credibility is entitled to great deference if it is supported by substantial evidence").

---

[1] The ALJ also could have considered that Cragin was able to engage in at least a few exerting activities during the relevant period: In December 2005, she was planning to drive to Florida for the holidays (AR 363); in February 2006, she was bowling "[a]gain" (AR 355); and in May 2006, she was scrubbing floors (AR 350).

12

## II.     Medical-Vocational Guidelines ("the Grids")

Finally, Cragin argues that the ALJ should have consulted with a vocational expert regarding the non-exertional impairments discussed above, instead of relying on the Grids to determine that jobs existed in significant numbers in the national economy that Cragin could perform prior to September 14, 2009.  As discussed above, however, the ALJ did not err in failing to account for any limitations caused by these impairments in Cragin's RFC, and thus he was not required to account for these limitations in assessing Cragin's ability to work under the Grids.  *See Selian v. Astrue*, 708 F.3d 409, 421-22 (2d Cir. 2013) (holding that, where ALJ declined to find claimant's testimony about his pain credible, there was no error in ALJ concluding that pain did not deprive claimant of a meaningful employment opportunity, and thus ALJ could rely on the Grids and was not required to obtain the testimony of a vocational expert).  The ALJ also was not required to use a vocational expert before finding that Cragin could perform work existing in the economy.  The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).  Rather, it is only in cases where "a claimant's nonexertional impairments significantly diminish his ability to work–over and above any incapacity caused solely from exertional limitations–so that he is unable to perform the full range of employment indicated by the [Grids]" that the ALJ must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.  *Id.*

Here, the ALJ determined that, prior to September 14, 2009, although Cragin's ability to perform the full range of light work was "impeded by additional limitations" (AR 33), including an ability to climb, balance, stoop, kneel, crouch, and crawl "only occasionally" (AR 28), these limitations "had little or no effect on the occupational base of light work" (AR 33). The ALJ explained that: "While [Cragin's] additional limitations preclude the performance of the full range of light work, the[y] . . . leave the light and sedentary occupational bases virtually intact." (*Id.*) Cragin has failed to demonstrate otherwise, and the applicable authority supports this finding. *See* SSR 85-15, 1985 WL 56857, at *6 (1985) ("Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work."); SSR 83-14, 1983 WL 31254, at *2 (1983) ("to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally"); SSR 85-15, 1985 WL 56857, at *7 ("If a person can stoop occasionally . . . in order to lift objects, the sedentary and light occupational base is virtually intact."); *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) ("It is fairly obvious that . . . a restriction [of only occasional bending] would have very little effect on the ability to perform the full range of work at either the light or sedentary level."); Program Operations Manual System ("POMS") DI 25020.005.A.4.b ("Limitations in kneeling and crawling, in themselves, would have very little impact on the sedentary, light[,] and medium occupational bases."). Therefore, the ALJ was not required to account for these "additional limitations" in analyzing Cragin's ability to work under the Grids, and was not required

14

to consult a vocational expert in performing that analysis. *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (citing *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)).

## **Conclusion**

For these reasons, the Court DENIES Cragin's motion (Doc. 5), GRANTS the Commissioner's motion (Doc. 6), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 12th day of July, 2013.

           /s/ John M. Conroy
           John M. Conroy
           United States Magistrate Judge